**Bobby Lee RAMDASS, Petitioner,**

v.

**Ronald J. ANGELONE, Director of Virginia Department of Corrections, Respondent.**

No. CIV. A. 2:96CV831.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 14, 1998.

---

346

Katherine P. Baldwin, Assistant Attorney General, Office of the Attorney General, Capital Habeas Litigation Section, Richmond, VA, for Ronald J. Angelone.

John M. Ryan and Nash F. Bilisoly, Vandeventer, Black, Meredith and Martin, LLP, Norfolk, VA, Michele J. Brace, Robert Edward Lee, Jr., Mark E. Olive, Virginia Capital Representation Resource Center, Richmond, VA, for Bobby Lee Ramdass.

### *OPINION AND FINAL ORDER*

JACKSON, District Judge.

In January, 1993, Petitioner was convicted in the Circuit Court of Fairfax County, Virginia for the September, 1992 murder of Mohammad Z. Kayani, a convenience store clerk. Pursuant to the jury's recommendation, on April 2, 1993, the court sentenced Petitioner to death. Subsequently, Petitioner exercised his state appeals to no avail. On March 11, 1997, Petitioner filed an amended petition for a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254,[1] alleging violations of federal constitutional rights during his conviction and sentencing. This matter comes before the Court on Respondent's April 28, 1997 motion to dismiss the petition. On June 3, 1997, Petitioner filed a response to Respondent's motion to dismiss. On June 26, 1997, Respondent filed a reply to Petitioner's response.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia, the matter was referred to a United States Magistrate Judge for Report and Recommendation ("R & R"). On February 27, 1998, the Magistrate Judge filed his R & R. He found merit in one ground in the petition and recommended that the motion to dismiss be denied and that Petitioner's case be remanded for resentencing.

By copy of the R & R, each party was advised of his right to file written objections to the findings and recommendations made by the Magistrate Judge. On March 30, 1998, this Court received "Petitioner's Objections to Magistrate Judge's Report and Recommendation" and "Respondent's Objections to the Magistrate Judge's Report and Recommendation." On April 13, 1998, both parties filed respective replies to the objections.

With some exceptions, Petitioner objects to the Magistrate Judge's recommendations to deny certain claims on the basis of procedural default. Of the claims the Magistrate Judge addressed on the merits, Petitioner does not contest the ultimate recommendation to order Petitioner's resentencing; however, he does object to the recommendations to deny the remaining claims on the merits. Further, Petitioner maintains that he is entitled to conduct discovery and present evidence on his claims which were denied on the merits. Respondent disagrees with the standard the Magistrate Judge utilized in concluding that certain claims were not procedurally defaulted and the recommendations that certain claims were not procedurally defaulted. Additionally, Respondent objects to the ultimate recommendation to remand Petitioner's case for resentencing. Both parties object to the standard of review the Magistrate Judge applied when evaluating claims on the merits.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court, having reviewed the record in its entirety, shall make a *de novo* determination of those portions of the Magistrate Judge's R & R to which the parties specifically objected. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

### I. FACTS AND PROCEDURAL HISTORY

The R & R contains a detailed statement of the facts surrounding the crime, Petition-

---

1. On February 14, 1997, Petitioner filed his initial petition.

er's conviction and sentencing, and subsequent state appeals. (R & R 2–17.) The Court adopts the Magistrate Judge's explication of facts, with some modifications. The facts and procedural history are as follows.

## A. Facts

During the night of September 1, 1992, and early morning of September 2, 1992, Petitioner and Darrell Wilson, both armed with pistols, were returning home in a car with three other men, Shane Singh,[2] Edward O'Connor, and Candelerio Ramirez, after abandoning a plan to rob persons at a Roy Rogers restaurant in Fairfax County. The restaurant was closed. Instead, the men, including Petitioner, decided that they would rob persons at a 7–Eleven store on Buelah Street in Fairfax County.

Near one o'clock on the morning of September 2, 1992, the five men entered the 7–Eleven store. Petitioner entered first and "drew" his pistol on Kayani, a clerk who was behind the cash register. Wilson, who also displayed his pistol, ordered all the customers to lie on the floor and to not look at him. The other three men, who were unarmed, took the customers' wallets, money from the cash register, and cigarettes, Kool Aid and lottery tickets from the store's stock.

After Petitioner ordered Kayani to open the safe, Kayani knelt down next to the safe and unsuccessfully tried to open it. Petitioner squatted next to Kayani and yelled at him to open the safe "or I'll blow your f— head off.[3]" *Ramdass v. Commonwealth*, 246 Va. 413, 437 S.E.2d 566, 568 (Va.1993). At approximately the same time, Wilson fired his pistol at one of the customers lying on the floor. (1/27/93 Tr. at 206–07.) Immediately thereafter, Singh, standing behind Petitioner, saw Petitioner shoot Kayani in the head on his second attempt to get the weapon to fire. (1/27/93 Tr. at 211–12.) Testifying about the precise moment of the shooting, Singh stated that Petitioner "[c]licked it once and it didn't go off, clicked it again and it went off." (*Id.*)

Just after Petitioner shot Kayani, Ramirez testified that he returned from a back room in the store. Ramirez saw Petitioner laughing as he stood over Kayani's body. (1/27/93 Tr. at 145.)[4] Shortly thereafter, Ramirez opened the front door and Wilson, Singh, and O'Connor ran out. As Ramirez held the door open, he urged Petitioner to "[c]ome on." (*Id.* at 146.) However, Petitioner was "clicking the gun at the people on the floor" and told Ramirez to "[s]hut up or I'll put one in you." (*Id.*) One of the customers also heard the clicking of the gun as Petitioner left. (1/27/93 Tr. at 125, 129–30.)

When they got in the car, Ramirez heard Petitioner ask Wilson, "[w]hy didn't you get rid of the people on the floor?" (*Id.* at 146.) After the men divided the robbery proceeds at Singh's home, Petitioner told Ramirez, "[d]on't tell anybody about this [o]r I'll kill you and I'll kill your whole family." (1/27/93 Tr. at 146–47.)

Singh, a co-owner of the gun with Petitioner, testified that the gun would not fire unless held at a certain angle because the bullets in the cylinder were not the right size for the gun. (*Id.* at 213.) Singh was corroborated by Julian Jay Mason, Jr., a forensic scientist specializing in firearms identification, who later examined and test-fired the gun. (*Id.* at 245, 248.) Mason testified that the 9 millimeter cartridges Petitioner used in the gun were smaller than the .38 caliber cartridges designed for the gun. Consequently, when the gun's muzzle was pointed down, the 9 millimeter cartridges slid too far forward in the cylinder to be struck by the firing pin. (*Id.* at 250–51.) Mason further testified that when the muzzle was pointed up, the cartridges slid back closer to the firing pin, and the gun could be fired. (*Id.* at 251.)

---

**2.** For this crime, Singh had plead guilty to murder as a principal in the second degree, robbery, and use of a firearm in the commission of a robbery as a principal in the second degree. He testified that he faced three life sentences plus six years. (1/27/93 Tr. 202.) In exchange for his testimony, charges for other robberies in which he had participated were dropped.

**3.** Another employee of the 7–Eleven store testified that a clerk could not open the part of the safe containing most of the money because the store manager had the keys.

**4.** Later, Ramirez heard Petitioner say that he shot Kayani because he "took too long." (1/27/93 Tr. at 147.)

On direct, after stipulating as to her expertise, the medical examiner testified that the bullet which killed Mr. Kayani entered the left side of his head, just above the left ear, traveled forward, upward and rightward exiting out the right side of his head. (*Id.* at 99–100.) On cross examination, the medical examiner was questioned in more detail about the track of the bullet through the head and revealed that powder burns and debris were found on Kayani's head. (*Id.* at 102.)

Based on the evidence, the jury convicted Petitioner of capital murder and the use of a firearm in the commission of a felony. The case proceeded to the capital sentencing phase. The Commonwealth, in seeking the death penalty, relied solely upon the "continuing serious threat to society" condition, also known as "future dangerousness." In support of its position, the Commonwealth introduced evidence of Petitioner's use of a firearm and participation in the robbery of a Pizza Hut on August 25, 1992; robbery on August 29, 1992, of a hotel night clerk, who was physically beaten by Petitioner and threatened with a gun during the robbery; use of a firearm and robbery of a Domino's Pizza restaurant on August 30, 1992; and a second robbery and attempted murder, on August 30, 1992, of a taxi driver, who was shot in the head by Petitioner. At the time of trial, Petitioner had been convicted of the Pizza Hut and the Domino's Pizza crimes and formally sentenced for the Pizza Hut robbery. At the time judgment was imposed by the court for the 7–Eleven crimes, Petitioner had additionally been convicted and sentenced for the hotel robbery and formally sentenced for the Domino's robbery.

In opening statements, which had been reserved, defense counsel argued that Petitioner need not be sentenced to death on the basis of future dangerousness because he was already required to serve at least 99 years in jail. The length of the term precluded release and eliminated any future threat to society. Toward the end of the opening, trial counsel stated: "Bobbie Lee Ramdass was a bad boy. He's a bad man. He's committed crimes of violence in the past. He won't stand up here and tell you that he won't commit crimes of violence in the future." (1/29/93 Tr. 98.)

Trial counsel informed the jury of Petitioner's extensive juvenile record. Beginning in 1985, Petitioner came before the Court for a purse snatching, for which he received probation, (1/29/93 Tr. at 198–99); theft of a moped and a burglary, for which he was sentenced to a juvenile facility, (1/29/93 Tr. at 200); being a juvenile escapee, (1/29/93 Tr. at 201); and robbery as a juvenile, for which he received an adult sentence to Southampton prison, (1/29/93 Tr. at 17–18, 202). The jury also learned that Petitioner acquired his first gun at age thirteen or fourteen, while he was selling drugs, (1/29/93 Tr. at 149–51); that he was in possession of a loaded gun when he was arrested, as a juvenile, and charged with robbery, (1/29/93 Tr. at 24); and that he violated his parole, which began on May 21, 1992, by acquiring a gun on July 4, 1992, less than sixty days later, (1/29/93 Tr. at 85–86, 202).

Furthermore, the defense presented evidence of a bleak, abusive, unstructured childhood. Petitioner was physically and emotionally abused and raised in conditions of severe deprivation. There was no positive guidance.

Petitioner's brother, Mark Ramdass, testified on Petitioner's behalf. After admitting that he would not have appeared without being subpoenaed, Ramdass described his brother's efforts to protect him and to try to keep him out of trouble. (1/29/93 Tr. 103–05.) He also acknowledged his brother's numerous encounters with the law and incarceration, and admitted his own criminal activities, resulting in two felony convictions. (*Id.* at 112.) At one time, Petitioner and the witness were both at Southampton Correctional facility. (*Id.* at 113.)

Petitioner's mother testified that she was one of twenty-one children and that she was sexually abused and ran away from home at an early age. (*Id.* at 217.) She was working as a topless dancer when Petitioner was born. (*Id.* at 219.) She acknowledged being convicted of writing a bad check and two assault and battery charges. She also confirmed that she twice lost custody of her children for neglect. (1/29/93 Tr. 227–28.)

She described how Petitioner was physically abused by a boyfriend and how she taught petitioner to defend himself. She admitted assaulting a former boyfriend and a neighbor. (*Id.* at 232.)

Jennifer Joffe, a Virginia probation/parole officer, was called by the defense. She had prepared the probation report following Petitioner's 1988 conviction for robbery. (*Id.* at 115.) Joffe presented evidence of Petitioner's home environment and difficult upbringing. On cross-examination, she acknowledged that none of the counseling reports prepared on Petitioner revealed the presence of psychoses or serious mental problems. (*Id.* at 126.) She also concurred in the assessment of Petitioner as immature, impulsive, unremorseful, and possessed of a great potential for violence. (*Id.* at 127.) In response to the question "[y]ou felt he was a danger on the street," she responded, "[y]es." (*Id.* at 128.)

Petitioner did not call the court-appointed health expert to testify as to Petitioner's mental health or mitigating circumstances. After an evaluation, the court-appointed expert concluded that there were no mitigating circumstances in Petitioner's case.

Finally, though Petitioner did not testify in the guilt phase, Petitioner did testify in the sentencing phase. (1/29/93 Tr. 132–216.)

While the jury was deliberating on punishment during the penalty phase of the capital murder proceeding, they submitted a question to the court stated as follows: "[I]f the defendant is given life, is there a possibility of parole at some time before his natural death," (1/29/93 Tr. at 278). The court responded: "[I]f you find the Defendant guilty, which you have in this case, you should impose such punishment as you feel is just under the evidence and within the instructions of the Court. You are not to concern yourselves with what may happen afterwards." (1/29/93 Tr. at 281.) The Court did not directly answer the jury's question.

Ultimately, on January 30, 1993, the jury unanimously recommended a sentence of death for Petitioner. On April 2, 1993, the court imposed judgment upon Petitioner, sentencing him to death in conformity with the jury verdict for the offense of capital murder.

## B. Procedural History

On September 2, 1992, Petitioner murdered Muhammad Kayani, a clerk employed at a 7–Eleven convenience store on Buelah Street in Fairfax County, Virginia. He was arrested on September 11, 1992, for an earlier robbery, together with other defendants, and ultimately connected to the 7–Eleven robbery and murder. On September 21, 1992, Petitioner was indicted by a Fairfax County grand jury on capital murder, armed robbery, and use of a firearm in the commission of a robbery.

Counsel was appointed in timely fashion, pretrial discovery was promptly pursued. On November 2, 1992, the trial court denied Petitioner's request to make an ex parte showing of need for expert assistance. (11/2/92 Tr. 20–32.) On December 8, 1992, the trial court denied Petitioner's motion for a physical exam concluding that there was a lack of information sufficient to establish the need for an exam. (12/8/92 Tr. at 6.) Counsel then proffered that he needed the exam to determine whether Petitioner suffered from a reflexive disorder. (*Id.* at 7–8.) Next, the trial court denied Petitioner's request for appointment of an expert investigator, but did appoint a third attorney to the defense team. (*Id.* at 22.) Next, the trial court declined to order the Commonwealth to turn over to Petitioner statements Petitioner claimed were exculpatory. (*Id.* at 44.)

The matter came on for trial on January 26, 1993. The first day consisted of jury *voir dire* and selection. At trial, Petitioner, by counsel, entered a plea of guilty to the robbery charge which was accepted by the court following the normal colloquy. However, at the request of the Commonwealth Attorney, and over the objection of defense counsel, a finding with regard to Count II of the indictment, robbery, was withheld pending the receipt of evidence of the other offenses.

At the conclusion of the evidentiary portion of the trial, the jury returned a verdict of guilty of capital murder and guilty of use of a firearm in the commission of a felony. Petitioner was sentenced to four years in the

penitentiary for the latter crime. Following the jury verdict, the court found Petitioner guilty with respect to Count II, robbery, finding on the record that Petitioner's plea of guilty was freely and voluntarily given. The defense waived preparation of a presentence report, but the court, *sua sponte*, ordered the preparation of a presentence report on the offense of robbery. Thereafter, the jury heard evidence with regard to punishment on the capital murder charge, and following argument and instruction by the court, returned a verdict of death.

In anticipation of the preparation of the presentence report, the matter was set over for further proceedings on March 3, 1993. Sentencing was continued from that date, however, until April 2, 1993, at which time the court imposed judgment upon Petitioner, sentencing him to death in conformity with the jury verdict for the offense of capital murder; four years in the penitentiary, in conformity with the jury verdict for use of a firearm in the commission of a felony; and life for the robbery, incident to Petitioner's plea of guilty.

Trial counsel pursued a direct appeal on behalf of Petitioner, assigning the following errors:

1. The Trial Court erred in denying the Appellant's Motion For A Bill of Particulars, thereby denying Appellant his rights protected by the Sixth and Fourteenth Amendments of The United States Constitution and the Constitution of Virginia.

2. The Trial Court erred, and denied the Appellant his Fifth, Sixth and Fourteenth Amendment rights, and his Rights protected by The Virginia Constitution through the denial of his motion for discovery of co-defendant polygraph questions and answers for impeachment purposes.

3. The Trial Court erred in granting an extended reasonable doubt instruction.

4. The Trial Court erred in denying the jury instruction utilized in *Commonwealth v. Wright*, tried in the same circuit and approved by the Virginia Supreme Court.

5. The Trial Court erred in denying the defendant's proffered jury instruction regarding the inconsistent testimony of Shane Singh.

6. The Trial Court erred in admitting evidence of the Defendant's unadjudicated misconduct in violation of the United States and Virginia Constitutions.

7. The Trial Court erred in denying the Defendant's proffered sentencing jury instruction "B–S" which instructed the jury that they must all agree that the Defendant would be a future danger.

8. The Trial Court erred, and denied Defendant his rights protected by the Virginia and United States Constitutions 5th and 14th Amendment Rights, by denying Defendant's proffered sentencing jury instruction "E–S" which instructed they jury as to the standard of proof required to be convinced of the unadjudicated misconduct of the Defendant.

9. The Trial Court erred in refusing to respond to a jury question, during the sentencing stage of the trial, that Defendant would not be eligible for parole upon his conviction of capital murder in the instant matter in violation of § 19.2–264.4 of the Virginia Code and the Eighth and Fourteenth Amendments to the United States Constitution.

10. The Trial Court erred in denying Defendant the right to raise his inability to make parole upon conviction of the capital murder in the instant case.

11. The imposition of the death penalty by electrocution is cruel and unusual punishment, in violation of the Virginia Constitution and the Eighth Amendment of the United States Constitution and the Trial Court erred in finding to the contrary.

12. The Trial Court erred in withholding a finding of guilt on the underlying robbery charge, and further erred, and denied the Defendant's 5th and 14th Amendment rights by refusing to sentence the Defendant without a presentencing report despite its waiver by Defendant and his counsel and the fact that the Defendant had been incarcerated the entire period of time since the preparation of the prior presentencing report.

13. The Trial Court erred in denying the defendant funds for expert witnesses, medical doctors, and private investigators.

14. The Trial Court erred in denying the Defendant a medical expert to perform a competent physical examination to ascertain his physical disabilities.

15. The Court erred in denying the Defendant discovery regarding future dangerousness prior to trial.

16. The Trial Court erred in denying Defendant's Motion to Dismiss on the basis that the Virginia Death Penalty Statute is unconstitutional.

17. The Trial Court erred in denying defendant's motion to dismiss on the basis of the denial of due process under the United States and Virginia Constitutions.

18. The Trial Court erred in refusing to dismiss a juror who was personally acquainted with one of the Commonwealth (police) witnesses, and an additional juror who had preconceived notions regarding the brutality of the crime.

19. The Trial Court erred and violated his Fifth, Eighth and Fourteenth Amendment Rights in refusing to permit inquiry into whether the jurors held the belief that the Defendant would be executed if the jury were to impose the death sentence.

20. The Trial Court erred in denying Defendant the opportunity to *voir dire* the jury regarding specific mitigation circumstances about which they would be generally instructed, and further erred in denying Defendant's motion to exclude those jurors that were unable to consider specific mitigating circumstances in sentencing.

21. The Trial Court erred in denying the Defendant's motion for *in-camera* requests for expert witnesses in violation of his Fourth. Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution and rights protected by the Virginia Constitution.

22. The Trial Court erred in denying Defendant's motion for a private investigator to aid the defense in the preparation of trial in violation of his Fifth and Fourteenth Amendment Rights and his rights protected by the Virginia Constitution.

23. The Trial Court erred in denying the Defendant's motion that it review evidence to determine whether evidence was or was not exculpatory rather than leaving such determination to the Commonwealth Attorney in violation of his Sixth and Fourteenth Amendment Rights and rights protected by the Virginia Constitution and in violation of the discovery rules of this court.

24. The Trial Court erred in permitting hearsay testimony, regarding personal information about the victim, via the first page of the medical examiners reports without redacting hearsay portions.

25. The Trial Court erred in sustaining objections regarding the testimony about the lack of fingerprints left by Mr. Ramirez in the 7–11; as to the specific location of Mr. Ramirez on dates preceding this incident; in denying the Defendant's probing into the background of Commonwealth witness Mr. Ramirez, and in denying the defendant the opportunity to examine Mr. Ramirez and Mr. Singh regarding other offenses in which the witnesses were involved thereby denying him right of confrontation in violation of the Sixth Amendment of the Constitution and rights protected by the Virginia Constitution.

On November 5, 1993, the conviction was affirmed. *Ramdass v. Commonwealth*, 246 Va. 413, 437 S.E.2d 566 (Va.1993). The court noted that Assignments 7, 17, 18, 19, 20, and 24 were not briefed and concluded that those issues had been waived. With regard to the remaining issues, the court addressed and ruled on the issues on the merits.

Following denial of the appeal, a petition for certiorari was filed in the United States Supreme Court. While the petition addressed multiple issues, including discovery, unadjudicated misconduct, constitutionality of the death sentence, expert assistance, and potentially exculpatory evidence, only one assignment was significant: "Whether the Court's refusal to respond to [the] jury inquiry as to Defendant's parole status violates the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution."

There was no action for several months, but on June 17, 1994, the United States Supreme Court decided the case of *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), and ruled that

where a defendant's future dangerousness is at issue and state law prohibits a defendant's release on parole, due process requires the sentencing jury to be informed that the defendant is parole ineligible.

Three days later, on June 20, 1994, certiorari in petitioner's case was granted and the case was remanded to the Virginia Supreme Court for further consideration based upon the Supreme Court's opinion in *Simmons*. *Ramdass v. Virginia*, 512 U.S. 1217, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994).

As presented by Petitioner to the Supreme Court of Virginia on remand, the sole issue in *Simmons* was "[w]hether the due process clause of the Fourteenth Amendment was violated by the refusal of the trial judge to instruct the jury that the defendant was ineligible for parole when the prosecution relied on future dangerousness to justify imposition of the death penalty." Respondent argued that *Simmons* was not raised in the trial court; that Petitioner was eligible for parole and *Simmons*, therefore, did not apply; and that *Simmons* was irrelevant because the sentencer can always consider parole ineligibility. On November 4, 1994, the Supreme Court rejected Petitioner's claim, found that Petitioner was eligible for parole, and concluded that *Simmons* did not apply. *Ramdass v. Commonwealth*, 248 Va. 518, 450 S.E.2d 360 (Va.1994).

Once again a petition for writ of certiorari was filed in the Supreme Court of the United States, raising many of the same issues originally presented, but the petition was rejected on April 24, 1995. *Ramdass v. Virginia*, 514 U.S. 1085, 115 S.Ct. 1800, —— L.Ed.2d —— (1995).

On May 11, 1995, counsel was appointed to pursue a petition for writ of habeas corpus in the courts of the Commonwealth. On August 30, 1995, Petitioner instituted a petition for writ of habeas corpus in the Virginia Supreme Court alleging the following broad categories as grounds for relief:

1. Denial of effective assistance of counsel for reasons addressing trial strategy (or lack thereof), improper *voir dire*, venue, jury sequestration, handling of defense experts, handling of evidence, improper preparation for examination of prosecution experts, inadequate pretrial investigation, improper handling of a co-defendant's testimony, objections addressing the murder weapon and the forensics expert, and improper handling of the sentencing phase.

2. Prosecutorial misconduct, consisting of the withholding of exculpatory evidence; use of highly prejudicial evidence (in the form of photos, the autopsy report, unadjudicated misconduct, and a co-defendant's sentence); and improper evidence regarding parole.

3. Trial court error in the form of a delayed finding of guilt on the robbery charge; failure to strike members of the jury panel challenged for cause; failure to require the prosecution to produce certain purportedly exculpatory evidence; admission of evidence that was either highly prejudicial or not preceded by a proper foundation; instructional errors, a *Simmons* error; and the denial of an investigator.

4. The Virginia Supreme Court proportionality review was inadequate.

On January 19, 1996, the court denied an *ex parte* motion for expert assistance and an investigator. On March 18, 1996, the court denied the habeas petition without an evidentiary hearing.

On April 19, 1996, counsel filed a petition for rehearing in the state habeas proceeding, alleging as grounds for the rehearing that Petitioner was denied the effective assistance of counsel (for a variety of reasons previously presented), that the prosecution engaged in misconduct prejudicial to Petitioner, and that the trial court denied Petitioner's constitutional rights in numerous respects. Some issues were raised for the first time, and the *Simmons* claim was well articulated. The petition for rehearing was denied June 7, 1996.

The Circuit Court of Fairfax County set Petitioner's execution for August 28, 1996. On June 25, 1996, Petitioner filed a motion to

stay execution, but the motion was denied by the Virginia Supreme Court on July 17, 1996.

On August 14, 1996, incident to plans to present a federal habeas petition, Petitioner moved for a stay of execution and for leave to proceed *in forma pauperis,* and for appointment of counsel in federal court.

On August 15, 1996, the execution was stayed. Thereafter, on September 11, 1996, counsel was appointed for the purpose of filing the current action.

## II. CLAIMS PRESENTED

Petitioner sets forth the following claims as grounds for federal habeas relief.

A. The trial court's failure to allow consideration of Petitioner's parole ineligibility violated his rights under the Eighth and Fourteenth amendments (The *Simmons* claim).

B. Petitioner was denied his constitutional right to the assistance of a mental health expert in violation of the Fifth, Eighth and Fourteenth amendments.

C. Petitioner was denied effective assistance of counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth amendments.

 1. Trial counsel's trial strategy was either nonexistent or internally inconsistent.

 a. Petitioner was unreasonably advised not to testify.

 b. Trial counsel failed to confront the prosecution's argument that the gun was fired twice and in an upward position, thus establishing the requisite intent.

 c. Trial counsel failed to challenge the credentials and testimony of the prosecution's medical examiner.

 d. Trial counsel failed to cross examine the prosecution's "firearms identification" expert.

 e. Trial counsel failed to obtain expert assistance.

 2. Trial counsel failed to object to co-defendant's testimony about his life sentence.

 3. Trial counsel failed to establish Petitioner's parole ineligibility.

 a. Trial counsel failed to request schedule adjustments which would have created Petitioner's parole ineligibility.

 b. Trial counsel failed to challenge the determination that Petitioner was eligible for parole.

 4. Trial counsel failed to conduct adequate *voir dire.*

 5. Trial counsel conceded the sole aggravating factor in the penalty phase.

 6. Trial counsel failed to adequately prepare for the penalty phase.

D. Petitioner was unreasonably and unfairly deprived of basic expert assistance in violation of the Fifth, Sixth, Eighth and Fourteenth amendments.

E. Petitioner was arbitrarily and unreasonably denied his rights under the Fifth, Sixth, Eighth and Fourteenth amendments to make an *ex parte* showing of need for expert assistance.

F. The trial court's refusal to allow Petitioner exculpatory statements, the trial court's refusal to review such statements *in camera* and the prosecutor's improper refusal to provide exculpatory statements denied Petitioner his Fifth, Sixth and Fourteenth amendment rights.

G. The Virginia death penalty statute on its face, and as applied, violates the Sixth, Eighth and Fourteenth amendments.

H. Petitioner was denied his right to confrontation in violation of the Sixth amendment.

I. The trial court violated Petitioner's constitutional rights by admitting unadjudicated misconduct in the penalty phase.

J. The Virginia Supreme Court failed to perform an adequate review of Petitioner's death sentence for proportionality and for passion, prejudice or other arbitrary factors.

K. Virginia's capital murder sentencing statute is unconstitutional.

## III. PROCEDURAL DEFAULT

■ Title 28 U.S.C. § 2254(b) requires exhaustion of claims before presentment to federal courts. A claim is exhausted if either

the claim was presented to the state courts or, though never presented to the state courts, the claim if now presented to the state courts would be found to be procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Respondent objects to the standard the Magistrate Judge employed for determining when a claim has been procedurally defaulted. In addition, in most cases, each party objected to the Magistrate Judge's underlying recommendation as to whether a particular claim was procedurally defaulted. Accordingly, the Court will first outline the rules of procedural default and its exceptions. The Court will then determine whether each individual claim is preserved or defaulted.

**Standard for Procedural Default**

■■■ This Court may not review claims that have been clearly and expressly defaulted under an independent and adequate Virginia state procedural rule. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Under Virginia law, to preserve an issue for direct appeal, a timely objection generally must be made at trial. Va. S.Ct. R. 5:25; *Coppola v. Warden of Virginia State Penitentiary,* 222 Va. 369, 282 S.E.2d 10 (Va.1981). Further, excepting ineffective assistance of counsel claims which may first be presented on collateral review, failure to raise a claim on direct appeal bars consideration of that claim in subsequent state habeas proceedings. *Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698, 699 (Va. 1983); *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (Va.1974). Finally, claims which are not presented in an original state habeas petition will not ordinarily be considered in a subsequent state petition. Va.Code § 8.01–654(B)(2).

In his motion to dismiss, Respondent argued that certain arguments supporting some of Petitioner's claims were never presented to the state courts and, therefore, the arguments were procedurally defaulted pursuant to Va.Code § 8.01–654(B)(2). The Magistrate Judge concluded: "A claim raised in a federal petition for writ of habeas corpus must be essentially the same claim as that presented in state proceedings." (R & R 26.) Additionally, in several instances, the Magis-

trate Judge stated that where a claim was raised in the state proceedings, though the argument was not necessarily in the exact same nature, tenor or form, the matter was not procedurally defaulted. (*See, e.g.,* R & R 33, 36, 37.) Citing *Breard v. Pruett,* 134 F.3d 615 (4th Cir.1998) and *Mallory v. Smith,* 27 F.3d 991 (4th Cir.1994), Respondent objects and reiterates his contention that the argument presented to the federal court must be precisely the same argument presented to the state courts. Respondent claims that the Magistrate Judge considered arguments which were never presented to the state courts, but "now are presented under the heading of a claim that arguably was presented in state court."

■■■ Virginia Code § 8.01–654(B)(2) establishes a bright-line rule providing that a habeas petition "shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." The Fourth Circuit has held that both the operative facts and legal principles, *i.e.* the argument, must be presented to the state courts or else the claim is barred from federal review. *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997). Accordingly, Respondent's objection to the standard the Magistrate Judge used to for determinations of procedural default is **SUSTAINED.**

**Excuse of Procedural Default**

■■■ Despite the rule barring federal review of claims which have been defaulted on adequate and independent state grounds, two exceptions exist which excuse procedural default and permit federal review. First, where a petitioner can show both cause for and prejudice resulting from his default, a federal court may review a defaulted claim. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. With respect to "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct.

2639, 91 L.Ed.2d 397 (1986). With respect to "prejudice," a petitioner must show that the error worked to his *"actual* and substantial disadvantage," not merely that it created a *"possibility* of prejudice." *Id.* at 494, 106 S.Ct. 2639 (emphasis in original), *quoting United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Second, if a petitioner cannot show "cause" and "prejudice" sufficient to excuse a procedural default, his claims may still be reviewed where refusal to do so would result in a "fundamental miscarriage of justice." *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. To meet the miscarriage of justice exception, the petitioner must show either that a constitutional violation has probably resulted in the conviction of one who is actually innocent, *Schlup,* 115 S.Ct. at 867, or, for those petitioners who are sentenced to death, "by clear and convincing evidence that but for a constitutional error, no reasonable juror would find him eligible for the death penalty ...."[5] *Sawyer v. Whitley,* 505 U.S. 333, 348, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

## A. The trial court's failure to allow consideration of Petitioner's parole ineligibility violated his rights under the eighth and fourteenth amendments (The *Simmons* claim).

█ The Magistrate Judge found that this claim was not procedurally defaulted because, regardless of the precise nature or form of the argument, the issue of whether the sentencing jury was entitled to know Petitioner's parole eligibility status was presented both on direct appeal and in the state habeas proceeding. (R & R 33–34.) Respondent objects contending that the Magistrate Judge considered legal arguments which were never presented to the state

courts and, therefore, may not now be considered by this Court.

At no point has Respondent directed the Court's attention to any new arguments which should have been raised in state court. In his response to the motion to dismiss, Petitioner identified two purportedly new arguments: (1) on remand from the United States Supreme Court, the Virginia Supreme Court exceeded its constitutional authority and determined Petitioner's parole eligibility status and (2) on remand from the United States Supreme Court, the Virginia Supreme Court's decision that Petitioner was parole eligible was arbitrary. Petitioner argued that neither claim was procedurally defaulted because Petitioner could not challenge an error which did not arise until the Virginia Supreme Court handed down its opinion on the *Simmons* issue, and, once the decision was rendered, Petitioner was not required to submit a discretionary petition for rehearing in order to exhaust his remedies. In his reply to the Petitioner's response, Respondent summarily dismissed Petitioner's arguments as "silly," claiming that nothing prevented Petitioner from raising these arguments to the Virginia Supreme Court and, therefore, they are now barred from federal review.

The Court finds that the arguments have been procedurally defaulted. After the Virginia Supreme Court issued its decision declaring that Petitioner was parole eligible, Petitioner did not request reconsideration of the decision, rather, Petitioner presented these allegedly new arguments to the United States Supreme Court on an unsuccessful second request for review. Pursuant to *Slayton,* 215 Va. 27, 205 S.E.2d 680, Petitioner could have presented the arguments to the Virginia Supreme Court in his initial habeas petition because the issues could not have been raised at trial or on direct appeal. Petitioner, however, did not present the argu-

---

5. In his motion to dismiss, Respondent argued that the "actual innocence of the death penalty" doctrine no longer provides a gateway for petitioners to have their defaulted claims reviewed on habeas. In support of this position, respondent pointed to 28 U.S.C. § 2264(a). Respondent did not pursue this argument in his objections and, for two (2) reasons, the Court offers no opinion on this argument. First, it is not clear to

this Court whether Congress's intention in writing § 2264(a) was to completely eliminate the "actual innocence" exception in capital cases or merely to strictly limit what could be considered "cause" under the cause and prejudice exception. Second, because this Court has previously found that Virginia is not an "opt-in" state, (Mem. Op. and Order, Dec. 6, 1996.), § 2264(a) does not apply.

ments; thus, the argument would now be procedurally defaulted pursuant to Va.Code § 8.01–654(B)(2). Accordingly, the arguments may not be considered by this Court, and Respondent's objection is **SUSTAINED**. These new arguments will not be addressed on the merits, but the preserved *Simmons* issues will be discussed.

**B. Petitioner was denied his constitutional right to the assistance of a mental health expert in violation of the Fifth, Eighth and Fourteenth amendments.**

Petitioner claims that he was denied the constitutional right, pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to the assistance of a mental health expert. The Magistrate Judge determined that the claim was procedurally defaulted because it was neither presented on direct appeal nor in the state habeas petition. (R & R 34–35.) Petitioner objects arguing that the language in the state habeas petition was a dual claim which clearly argued a violation of *Ake* in addition to ineffective assistance of counsel for failure to secure a mental health expert.

■■■ The Court finds that the *Ake* claim has been procedurally defaulted because it was not presented to the state courts. In his state petition, habeas counsel claimed that trial counsel was ineffective for failing to object to a court-appointed mental health expert who would not work with Petitioner and to put on expert mental health testimony. Petitioner did not, however, explicitly argue that the court-appointed mental health expert was ineffective. Accordingly, Petitioner's objection is **OVERRULED**. The *Ake* ineffective mental health expert claim will not be addressed on the merits.

**C. Petitioner was denied effective assistance of counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth amendments.**

*1. Trial counsel's trial strategy was nonexistent or internally inconsistent.*

■■■ Petitioner's claim here is two-fold. First, Petitioner claims that trial counsel's strategy was ineffective because the choice of defenses was inconsistent.[6] Second, Petitioner claims that trial counsel's strategy was ineffective because they failed in four instances to produce any evidence on Petitioner's intent. The Magistrate Judge determined that any claim of ineffective assistance of counsel based on inadequate trial strategy was not presented to the state courts and, accordingly, was procedurally defaulted. (R & R 35.) Of the four instances in which Petitioner claims intent evidence should have been produced, the Magistrate Judge evaluated them individually and determined that two were procedurally defaulted: (1) that Petitioner was unreasonably advised not to testify and (2) that, as to the location of the bullet, trial counsel was ineffective in failing to obtain experts to assist in the defense of the case.[7] (R & R 35–36.) Petitioner objects arguing that the trial strategy claim is a "convenient umbrella" for the underlying sub-claims which were all presented to the state courts. Petitioner concludes, therefore, that both the trial strategy claim and the underlying sub-claims regarding intent evidence are preserved. With respect to any remaining ineffectiveness claims for failing to obtain expert assistance, which the Magistrate Judge found were not procedurally defaulted, Respondent objects.

The Court finds that the argument that the defenses were inconsistent is procedurally defaulted. In the state habeas petition, trial counsel was not charged with being ineffective for attempting to prove seemingly

---

6. That is, it was ineffective for trial counsel to argue: "The bullet did not come from Defendant's gun but if you find that it did, then Defendant did not intentionally shoot the victim but did so accidentally."

7. The Magistrate Judge reviewed on the merits the sub-claims that (1) trial counsel failed to confront the prosecution's argument that the gun was fired twice and in an upward position, thus establishing the requisite intent, (2) trial counsel failed to challenge the credentials and testimony of the prosecution's medical examiner, (3) trial counsel failed to cross examine the prosecution's firearms identification expert and (4) trial counsel failed to obtain expert assistance. (R & R 45–53.)

inconsistent defenses. Accordingly, Petitioner's objection is **OVERRULED.**

■ With respect to the claim of ineffectiveness for failure to present intent evidence, the Court finds that neither the claim itself nor the underlying sub-claims, excepting one, have been procedurally defaulted. Petitioner explicitly claimed in the state habeas petition that trial counsel was ineffective for not producing intent evidence. As to the claim of unreasonable advice not to testify, Petitioner clearly raised the issue in the state habeas petition and, additionally, in his motion to dismiss, Respondent addressed the claim on its merits. Finally, in reviewing Respondent's motion to dismiss, the Court finds that the only portion of the argument regarding expert assistance which Respondent claimed was procedurally defaulted was that pertaining to the location of the bullet. Respondent did not argue that the remaining arguments regarding lack of expert assistance were procedurally defaulted, but instead addressed them on the merits. Consequently, the defense of procedural default was waived, *Trest v. Cain,* 522 U.S. 87, ——, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997), and cannot now be raised on objection to the R & R. Accordingly, Petitioner's objection is **SUSTAINED** and Respondent's objection is **OVERRULED.**

2. *Trial counsel failed to object to a co-defendant's testimony about his life sentence.*

■ In his motion to dismiss, Respondent did not argue that this claim was procedurally defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 53.), implicitly concluding that the claim was not procedurally defaulted. Neither party objected. Accordingly, the Court finds that the claim is not procedurally defaulted and will address the claim on its merits.

3. *Trial counsel failed to establish Petitioner's parole ineligibility.*

The Magistrate Judge determined that trial counsel's failure to establish parole ineligibility by failing to request rescheduling of the trial was procedurally defaulted, but that failure to challenge the determination that Petitioner was not ineligible for parole was not procedurally defaulted because it was related to the *Simmons* claim. (R & R 36.) Respondent objects to the Magistrate Judge's latter determination. Petitioner concedes that neither claim was raised in the state proceedings and further, in light of the fact that the Fourth Circuit vacated *Mackall v. Murray,* 109 F.3d 957 (4th Cir.1997) in *Mackall v. Angelone,* 131 F.3d 442 (4th Cir. 1997) (en banc), does not object to the Magistrate Judge's determinations. Accordingly, Respondent's objection is **SUSTAINED.** Neither argument will be addressed on its merits.

4. *Trial counsel failed to conduct adequate voir dire.*

On page 37 of the R & R, the Magistrate Judge stated that all the arguments regarding the effectiveness of trial counsel's jury *voir dire* were preserved. Respondent objects to this statement arguing that the Magistrate Judge should have found all claims to be procedurally. defaulted, excepting those related to jurors Amelia, Powell, Ross and the questioning of the entire panel regarding mitigating factors. On page 56 of the R & R, the Magistrate Judge stated that because the claims related to jurors Amelia, Powell, Ross and the questioning of the entire pool regarding mitigating factors had been raised during the state proceedings, only those claims would be considered. With the exception of these, the Magistrate Judge declined to address any other jury *voir dire* issues. Accordingly, Respondent's objection is **OVERRULED.** Review of the merits of this claim will be limited to the issues surrounding jurors Amelia, Powell and Ross and the questioning of the entire pool regarding mitigating factors.

5. *Trial counsel conceded the sole aggravating factor in the penalty phase.*

In his motion to dismiss, Respondent did not argue that this claim was procedurally defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 58.), implicitly concluding that the claim was not procedurally defaulted. Neither party objected. Accordingly, the Court finds that the claim is not procedurally de-

faulted and will address the claim on its merits.

### 6. Trial counsel failed to adequately prepare for the penalty phase.

This claim encompasses two (2) arguments: trial counsel was ineffective for failing to object to the court-appointed mental health expert and trial counsel was ineffective for failing to present expert mitigating evidence. The Magistrate Judge determined that the former argument was procedurally defaulted, but the latter preserved. (R & R 59.) Petitioner objects raising two arguments. First, Petitioner urges that the Magistrate Judge's conclusion is inconsistent with the previous determination that the ineffectiveness claim was preserved. (R & R 34.) Second, Petitioner claims that Respondent waived procedural default.

The Court finds that the claim is not procedurally defaulted. The ineffective assistance of counsel claim was clearly raised in the state habeas proceeding where Petitioner claimed that trial counsel failed to object to the court-appointment mental health expert who would not work with the defense and failed to put on any expert mitigating testimony. Accordingly, Petitioner's objection is **SUSTAINED.** Both arguments will be addressed on the merits.

### D. Petitioner was unreasonably and unfairly deprived of basic expert assistance in violation of the Fifth, Sixth, Eighth and Fourteenth amendments.

In his motion to dismiss, Respondent did not argue that this claim was procedurally defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 62.), implicitly concluding that the claim was not procedurally defaulted. Neither party objected. Accordingly, the Court finds that the claim is not procedurally defaulted and will address the claim on its merits.

### E. Petitioner was arbitrarily and unreasonably denied his rights under the Fifth, Sixth, Eighth and Fourteenth amendments to make an ex parte showing of need for expert assistance.

In his motion to dismiss, Respondent did not argue that this claim was procedurally

defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 68.), implicitly concluding that the claim was not procedurally defaulted. Neither party objected to the Magistrate Judge's conclusion. Accordingly, the Court finds that the claim is not procedurally defaulted and will address the claim on its merits.

### F. The refusal to allow Petitioner exculpatory statements, the refusal to review such statements in camera and the prosecutor's improper refusal to provide exculpatory statements denied Petitioner his Fifth, Sixth and Fourteenth amendment rights.

Neither party objected to the Magistrate Judge's conclusion that, with the exception of the assertion of the right to an in camera hearing, this claim was procedurally defaulted. (R & R 31–33.) Accordingly, the Court adopts the findings made by the Magistrate Judge. The preserved claim will be reviewed on the merits.

### G. The Virginia death penalty statute on its face and as applied violates the Sixth, Eighth and Fourteenth amendments.

The Magistrate Judge determined that this claim had not been procedurally defaulted. (R & R 37.) Respondent objects arguing that some of the arguments that the Magistrate Judge considered were new arguments which were never presented to the state courts. Turning to Respondent's memorandum in support of his motion to dismiss, the Court finds that Respondent argued that five (5) specific arguments for unconstitutionality were procedurally barred because they were not raised in the state proceedings. They are: (i) that jurors are not informed that a life sentence will be imposed unless the jury recommends death; (ii) that the "vileness" aggravating factor is vague; (iii) that death by legal injection is cruel and unusual; (iv) that the sentencing statute does not require that a death sentence be set

aside if a court finds "good cause;" and (v) that the sentencing statute allows for hearsay in the post-sentence report.

On direct appeal, Petitioner argued (1) that death by electrocution is cruel and unusual and (2) that the Virginia death penalty statute is unconstitutional because "future dangerousness" is not meaningfully defined and no jury instruction is required in consideration of mitigating evidence. In his state habeas petition, Petitioner did not challenge the constitutionality of the death penalty statute. Accordingly, Respondent's objection is **SUSTAINED**. Those particular arguments will not be considered by this Court, but any remaining arguments will be evaluated on their merits.

### H. Petitioner was denied his right to confrontation in violation of the Sixth amendment.

In his motion to dismiss, Respondent did not argue that this claim was procedurally defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 85.), implicitly concluding that the claim was not procedurally defaulted. Neither party objected. Accordingly, the Court finds that the claim is not procedurally defaulted and will address the claim on its merits.

### I. The trial court violated Petitioner's constitutional rights by admitting unadjudicated misconduct in the penalty phase.

The Magistrate Judge determined that this claim was not procedurally defaulted because it had been raised both on direct appeal and in the state habeas proceedings. (R & R 37.) Respondent objects arguing that the claim that trial counsel was inadequate for failing to object to the admission of unadjudicated conduct without a burden of proof instruction is a new claim which was not presented to the state courts.

The Court finds that the claim is not procedurally defaulted because it was clearly raised before the state courts. On direct appeal, Petitioner claimed that the trial court erred in failing to proffer to the jury an instruction which stated a burden of proof for

consideration of unadjudicated misconduct. In the state habeas proceeding, Petitioner claimed that trial counsel was ineffective for failing to object to the admission of evidence of prior unadjudicated misconduct. Further, habeas counsel alleged that the trial court erred in permitting evidence of unadjudicated prior misconduct even without an objection to such evidence. Accordingly, Respondent's objection is **OVERRULED**.

### J. The Virginia Supreme Court failed to perform an adequate review of Petitioner's death sentence for proportionality and for passion, prejudice or other arbitrary factors.

 The Magistrate Judge determined that the issue of the sufficiency of the Virginia Supreme Court's proportionality review was procedurally defaulted, but that the issue of whether Petitioner's sentence was imposed under the influence of passion, prejudice or any other arbitrary factor or disproportionate was not procedurally defaulted. (R & R 33, 73.) Petitioner objects to the former conclusion. Respondent objects to the latter.

Va.Code § 17–110.1(C) mandates review of death sentences for proportionality and for passion, prejudice or arbitrariness, in addition to consideration of any errors alleged by a defendant. On direct appeal, Petitioner did not argue that either of these situations applied in his case. On direct review, the Virginia Supreme Court determined that Petitioner's death sentence was neither disproportionate nor influenced by passion, prejudice or arbitrariness. In his initial state habeas petition, Petitioner did not argue that the court had inadequately performed its review for passion, prejudice or arbitrariness, but did argue that the Virginia Supreme Court failed to adequately perform its proportionality review of his death sentence. The Virginia Supreme Court found the latter argument to be procedurally defaulted pursuant to *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680, but the court did not explain how and why *Slayton* applied to this claim. Given that the issue of whether the court adequately performed its review for proportionality could not be raised until such a review

was conducted, logic dictates that the claim could not be raised until the state habeas petition was filed. Thus, the reasoning of the Virginia Supreme Court is perplexing. Nevertheless, this Court cannot review the quality of the decision.[8] It is axiomatic that federal courts do not review state decisions based solely upon adequate and independent state law. Accordingly, Petitioner's objection is **OVERRULED.** Because Petitioner did not argue in his federal petition that the death sentence was imposed under passion, prejudice or arbitrariness or that the sentence was disproportionate, the Court finds that the claim is not properly before the Court. Accordingly, Respondent's objection is **SUSTAINED.** Neither argument will be considered on its merits.

### K. Virginia's capital murder sentencing statute is unconstitutional.

In his motion to dismiss, Respondent did not argue that this claim was procedurally defaulted. In the R & R, the Magistrate Judge evaluated this claim upon its merits, (R & R 77.), thereby implicitly concluding that the claim was not procedurally defaulted. Neither party objected to the Magistrate Judge's conclusion. Accordingly, the Court finds that the claim is not procedurally defaulted and will address the claim on its merits.

### IV. CLAIMS REVIEWED ON THE MERITS

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") is generally applicable to Petitioner's case, because his petition was filed well after April 24, 1996, the enactment date of the Act. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) (holding that the new provisions of chapter 153 generally apply to cases filed after the [AEDPA] became effec-

tive).[9] The newly amended 28 U.S.C. § 2254(d) establishes the standard of review to be applied by a federal court considering a state prisoner's petition for habeas relief. Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Both parties object to the standard of review as outlined by the Magistrate Judge. Petitioner objects arguing that in evaluating the Virginia Supreme Court's cursory, "no merit" state habeas ruling, the proper standard of review is *de novo.* Respondent objects to the Magistrate Judge's determination that mixed questions of law and fact (e.g. Petitioner's ineffective assistance of counsel claims) are to be reviewed *de novo.* Respondent argues that, under the AEDPA, state court findings both of fact and of law are subject to deferential review.

■■■ Section 2254(d) applies to any claim adjudicated on the merits in state court. Contrary to the argument advanced by Petitioner, a state court decision that summarily dismisses a petitioner's claim as meritless is an adjudication on the merits within the meaning of § 2254(d). *Wright v. Angelone,* 151 F.3d 151, 156, No. 97–32, 1998 WL 394990, at *4 (4th Cir. July 16, 1998); *Hen-*

8. Even if the Court did not find the claim procedurally defaulted, the Court finds no merit in this claim. The Fourth Circuit previously addressed the identical claim, holding that such a claim does "not provide sufficient constitutional grounds to warrant a writ of habeas corpus." *Buchanan v. Angelone,* 103 F.3d 344 (4th Cir. 1996).

9. The specific provision of § 107 of the AEDPA, however, is not applicable. Although § 107 contains several provisions pertaining specifically to capital defendants, these provisions are applicable only if the state meets the "opt-in" requirements set forth in § 107. Virginia does not meet the qualifications of § 107, (Mem. Op. and Order, Dec. 6, 1996.), thus precluding its applicability to this case.

*non v. Cooper,* 109 F.3d 330, 335 (7th Cir. 1997); *see also Parker v. Angelone,* 959 F.Supp. 319, 320 (E.D.Va.1997) (decision by state court summarily dismissing petitioner's claim as "frivolous" is an "adjudication on the merits"); *McLee v. Angelone,* 967 F.Supp. 152 (E.D.Va.1997) (holding that § 2254(d) does not require an explanatory decision from the state court).

Nevertheless, the practical significance of the § 2254(d) new standard of review is lessened in cases where the state court offers no explanation for its decision. *See Cardwell v. Netherland,* 971 F.Supp. 997, 1015 (E.D.Va. 1997). In cases where there is no indication of *how* the state court came to its decision, it will obviously be more difficult for the federal court to determine whether the state court's ultimate determination involved an unreasonable application of federal law. As explained by the Court of Appeals for the Seventh Circuit:

> [O]f course the better the job the state court does in explaining the grounds for its rulings, the more likely those rulings are to withstand further judicial review. That is just realism. It doesn't follow that the criterion of a reasonable determination is whether it is well reasoned. It is not. It is whether the determination is at least minimally consistent with the facts and circumstances of the case.

*Hennon,* 109 F.3d at 335.

If there is a qualifying state decision on the merits, the writ shall not be issued unless one of the statutory exceptions is met. Section 2254(d)(1) governs the standard of review for legal claims. A federal court may grant a petition if it finds that the state decision was contrary to clearly established federal law, or involved an unreasonable application of clearly established federal law. This section abrogates the *de novo* review that was required under *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).[10] However, the review of legal claims is still *de novo* in the sense that federal courts must independently determine whether the state court decision is correct under federal law. The AEDPA does not require any state decision to be upheld where the decision is "contrary to" or is "an unreasonable application of" federal law. Thus, the Act does not eliminate the power of the federal judiciary to determine what the law is, as required by Article III of the United States Constitution. The AEDPA did, however, alter habeas review by mandating a strict choice-of-law rule. In comparing the state decision to clearly established federal law, it is the law "as determined by the Supreme Court of the United States" that prevails. Federal courts are no longer permitted to rely on their own jurisprudence in addition to that of the Supreme Court. Thus, Petitioner must be able to point to an authoritative decision of the Supreme Court in order to secure a writ. *See Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996).

In *Green v. French,* 143 F.3d 865 (4th Cir.1998), the Fourth Circuit interpreted the meaning of "contrary to" and "unreasonable application of."

> [A] decision is "contrary to" precedent only when, either through a decision of pure law or the application of law to facts indistinguishable in any material way from those on the basis of which the precedent was decided, that decision reaches a legal conclusion or a result opposite to and irreconcilable with that reached in the precedent that addresses the identical issue.

*Id.*

> [A] decision represents an "unreasonable application of" precedent only when that decision applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable, when that decision fails to apply the principle of a precedent in a context where such failure is unreasonable,

---

**10.** Prior to passage of the AEDPA, review was *de novo* in the strictest sense of that term. Under the *Brown v. Allen* line of cases, insofar as petitions presented questions of law or mixed questions of law and fact, federal courts were required to treat the petitions as a wholly new complaint. Federal courts were required to treat state court adjudications in the particular case as nothing more than a potentially relevant authority from the court of last resort of another jurisdiction. *Brown,* 344 U.S. at 458, 73 S.Ct. 397.

or when that decision recognizes the correct principle from the higher court's precedent, but unreasonably applies that principle to the facts before it (assuming the facts are insufficiently different from those that give rise to the precedent as to constitute a new context for consideration of the principle's applicability).

*Id.*

Section 2254(d)(2) dictates the standard of review applicable to claims based on pure questions of fact. When a petition for habeas relief is based on a challenge to a factual determination, before granting an application for a writ, the federal court must find that the state decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). In addition, factual determinations made by a State court shall be presumed to be correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**A. The trial court's failure to allow consideration of Petitioner's parole ineligibility violated his rights under the Eighth and Fourteenth amendments (The *Simmons* claim).**

The Magistrate Judge recommended that Petitioner's case be remanded for resentencing on the basis that, on remand from the United States Supreme Court, the Virginia Supreme Court's decision, *Ramdass v. Commonwealth*, 248 Va. 518, 450 S.E.2d 360, limited the application of *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133, in a manner inconsistent with the language in *Simmons*, required an inconsistent treatment of two separate convictions of Petitioner, and contradicted more than one hundred years of Virginia law that says a conviction occurs when the jury renders the verdict. (R & R 113.) Respondent objects claiming that the Magistrate Judge clearly erred in recommending that the writ be granted on the basis of an error in state law.

*See* 28 U.S.C. § 2254(d)(1). Petitioner does not object to the Magistrate Judge's recommendation, but expresses two (2) issues of concern.[11] First, Petitioner notes that, to the extent that Virginia state law was interpreted, the Magistrate Judge's decision was appropriate because the Virginia Supreme Court's decision was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *See Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). Second, Petitioner clarifies that the right to inform the jury of his parole ineligibility status stemmed from both the Eighth Amendment and the Fourteenth Amendment.

The Court finds that the judgment of the Virginia Supreme Court resulted in a decision that is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and involved an "unreasonable application" of *Simmons* as determined by the Supreme Court of the United States. Accordingly, Respondent's objection is **OVERRULED.** For the following reasons, the application for a writ of habeas corpus is GRANTED and Petitioner's case remanded to the Circuit Court for Fairfax County for resentencing.

*1. Simmons v. South Carolina*

*Simmons* represents the most recent in a series of cases incrementally refining the process of applying the death penalty by expanding, first, the sentencer's knowledge, and second, an accused's right to respond to arguments advanced by the sovereign in support of the imposition of the death penalty. The theme in all of the cases is dual. First, due process requires that a defendant be permitted to introduce, and the sentencer consider, all relevant evidence that may be viewed in a mitigating light by the sentencer. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Eddings v. Oklahoma*, 455 U.S. 104,

---

**11.** Petitioner also noted his concern with the Magistrate Judge's determination that the Virginia Supreme Court possessed authority and jurisdiction to calculate Petitioner's parole ineligibility because such an issue is a mixed question of law and fact. The Court, however, has determined that argument to be procedurally defaulted. *See supra* III.G.

102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Second, a defendant must have both access to information upon which the sentencer relies in imposing the death penalty, *see Simmons; Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and the opportunity to rebut the same. *See Simmons; McCleskey; Skipper; Lockett; Gardner.* In addition to these themes, accurate information conveyed by the court, to the sentencer, is constitutionally encouraged, *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1993), without regard to how the information may be received and, in the context of the ability of a defendant, necessarily, to be able to respond.

In *Simmons,* the defendant was convicted of the murder of an elderly woman. The state relied solely on "future dangerousness" as the basis upon which the jury should consider whether the defendant should be sentenced to death or given life imprisonment as punishment for his crimes. *Simmons,* 512 U.S. at 157, 114 S.Ct. 2187. The petitioner, however, presented evidence that his future dangerousness was limited to elderly women and, therefore, the jury would have no reason to expect violent acts from him in prison. *Id.* at 158, 114 S.Ct. 2187. Further, the petitioner requested that the court instruct the jury that, in his case, "life imprisonment" did not permit parole. *Id.* "To buttress his request, [the] petitioner proffered, outside the presence of the jury, evidence conclusively establishing his parole ineligibility," *id.,* and, additionally, Petitioner presented evidence that (1) jurors believe a convicted murderer sentenced to "life imprisonment" will eventually be released from prison and (2) jurors indicate that the amount of time a convicted murderer would actually spend in prison is an important factor in choosing between life and death. *Id.* at 159, 114 S.Ct. 2187.

The trial court, however, denied the petitioner's request for an instruction regarding parole ineligibility. Further, the court denied a request for an instruction which indicated that the petitioner would remain in jail for the balance of his natural life. *Id.* at 159–60, 114 S.Ct. 2187.

During deliberations in the sentencing phase of the case, the jury asked whether life imprisonment carried with it the possibility of parole. *Id.* at 160, 114 S.Ct. 2187. The court instructed the jury not to consider parole in reaching its verdict and further said, "the terms life imprisonment and death sentence are to be understood in their plain and ordinary meaning." *Id.* Twenty-five minutes later, the jury returned with the sentence of death. *Id.*

The issue before the United States Supreme Court was whether the jury was entitled to know that the petitioner was ineligible for parole. In a seven to two opinion, the Court concluded that the jury was so entitled. Justice Blackmun, writing for the plurality, stated:

> In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause.

*Id.* at 163–64, 114 S.Ct. 2187. The opinion further stated: "[T]he jury was left to speculate about petitioner's parole eligibility when evaluating petitioner's future dangerousness, and was denied a straight answer about petitioner's parole eligibility even when it was requested." *Id.* at 165–66, 114 S.Ct. 2187.

Justice O'Connor, in an opinion concurring in the judgment and joined by Chief Justice Rehnquist and Justice Kennedy, stated:

> When the state seeks to show the defendant's future dangerousness, however, the fact that he will never be released from

prison will often be the only way that a violent criminal can successfully rebut the State's case. I agree with the Court that in such a case the defendant should be allowed to bring his parole ineligibility to the jury's attention—by way of argument by defense counsel or an instruction from the court—as a means of responding to the State's showing of future dangerousness. And despite our general deference to state decisions regarding what the jury should be told about sentencing, I agree that due process requires that the defendant be allowed to do so in cases in which the only available alternative sentence to death is life imprisonment without possibility of parole and the prosecution argues that the defendant will pose a threat to society in the future.

*Id.* at 177, 114 S.Ct. 2187.

### 2. "Unreasonable determination of the facts"

 In this case, on January 29, 1993, at the time of the jury's question, Petitioner had been tried and convicted by another jury of two counts of robbery and two counts of use of a firearm in the commission of a robbery at a Pizza Hut. Pursuant to that jury's recommendation, the court had imposed a sentence of seventy-six years. (1/29/93 Tr. at 133.) Additionally, on January 29, 1993, Petitioner had been tried and convicted of two counts of robbery and one count of the use of a firearm at a Domino's Pizza. That jury had recommended a sentence of eighteen years, but the court had not yet imposed the sentence.[12] (1/29/93 Tr. at 134.)

In its decision, the Virginia Supreme Court relied upon section 53.1–151(B1) of the Virginia Code, the statutory language establishing parole ineligibility in the event of three convictions for defined offenses. Section 53.1–151(B1) of the Virginia Code states, in part,

Any person convicted of three separate felony offenses of (I) murder, (ii) rape or (iii) robbery by the presenting of firearms

or other deadly weapon, or any combination of the offenses specified in subdivisions (I), (ii), or (iii) when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

The court found that on the day of trial, when the jury asked the question of whether there was "a possibility of parole at some time before his natural death," Petitioner had only two qualifying convictions—the Pizza Hut robbery, for which he had already been sentenced to seventy-six years, and the robbery of the 7–11 and murder of Kayani, the very offenses before the trial court for resolution. The court concluded that the Domino's Pizza conviction did not qualify under 53.1–151(B1) because even though the jury recommended that Petitioner serve eighteen years, that sentence was, in fact, not imposed until February 18, 1993, two and one-half weeks after conclusion of the death sentence trial. *Ramdass,* 450 S.E.2d at 361.

An obvious question arises from the court's reasoning: If the Domino's Pizza conviction did not constitute a conviction for purposes of ineligibility for parole (because the court had not yet imposed a sentence), how then could Petitioner's immediate offenses for which the jury was determining the sentence (and therefore judgment had not been entered on the verdict) constitute a second predicate conviction? The Court finds no logical reason for the exclusion of the Domino's Pizza robbery conviction as a third conviction of Petitioner. From the record of the state court proceedings, the Court finds that the procedural posture of the Domino's Pizza conviction is factually indistinguishable from the procedural posture of the immediate offense. Accordingly, the Court finds that in light of the record before it, the Virginia Supreme Court made an unreasonable determination of the facts when applying the law to determine whether Petitioner was parole eligible.

### 3. Unreasonable Application of Simmons

 In the course of deliberating on Petitioner's punishment, the jury sent the follow-

---

12. The sentence was imposed on February 18, 1993, after conclusion of the trial which is the subject matter of this appeal, but before actual imposition of the punishment by the trial court. Moreover, on February 18, 1993, Petitioner also entered a plea and was convicted of the robbery of the Bragg Towers Hotel. The record does not indicate what disposition was made for the robbery of a cab driver.

ing question into the court: "if the Defendant is given life, is there a possibility of parole at some time before his natural death?" (1/29/93 Tr. at 278.) At the time of Petitioner's trial, Virginia law precluded informing a jury, even in response to a request for information, about a defendant's parole status and whether defendant was parole eligible. *Mueller v. Commonwealth*, 244 Va. 386, 422 S.E.2d 380 (Va.1992).

The Commonwealth's immediate response to the jury's question was to advise the court of the language of the Model Jury Instruction 2.7000 which stated: "you are to decide what a just punishment is and not to concern yourself with what happens thereafter." (1/29/93 Tr. at 278.) In response thereto, Petitioner's counsel made the following statements:

MR. PIOTROWSKI: Your Honor, obviously I don't think that that answer is sufficient for the circumstances. I'm trying to suggest the wording and I anticipated this question and I hoped to have it written out for you, I don't, I'm trying to formulate it in my mind right now.

I believe that the Court [sic] should be told that they can not concern themselves with what will occur after they impose their sentence.

I feel, however, Your Honor, though that the question itself implies that they have a perception that if they give a life sentence that he will be out in a very short period of time.

I'm looking for some kind of language that would balance out that perception. A suggestion that I have here in front of me is—I wrote as we talked, is that "You must not concern yourself with matters that will occur after you impose your sentence, but you may impose that your sentence will be the legal sentence imposed in the case."

I'm open to any other suggestions.

(1/29/93 Tr. at 278–79.)

The court responded by quoting the Virginia Model Jury Instruction and stating to defense counsel that "that's what the law is;

isn't it, Mr. Piotrowski?" (*Id.* at 279.) In response, defense counsel acknowledged that such an instruction had been given in the past, but further responded: "I think a situation like this, when you're talking about a death case, when the issue's this crucial, that something more than that is necessary because their concern is parole which they aren't allowed to be told about." (1/29/93 Tr. at 280.) The court sustained the Commonwealth's objection [13] and informed the jury that they should impose what they felt was a fair and just sentence and not concern themselves with the consequences. The jury responded by recommending that Petitioner be sentenced to death. (*Id.* at 281.)

On direct appeal, Petitioner argued that the trial court committed error in refusing to respond to the jury question in a way that would make the jury aware that he would be ineligible for parole upon his conviction of capital murder, in derogation of the Eighth and Fourteenth Amendments to the United States Constitution. The assignment of error was rejected on direct appeal. *Ramdass*, 450 S.E.2d at 361.

In a petition seeking a writ of *certiorari* from the United States Supreme Court, the issue was raised in the context of the court's refusal to inform the jury of Petitioner's parole status. That petition for *certiorari* was granted. On remand, the sole issue before the Virginia Supreme Court was "whether the Due Process Clause of the Fourteenth Amendment was violated by the refusal of the trial judge to instruct the jury that the defendant was ineligible for parole when the prosecution relied on future dangerousness to justify imposition of the death penalty." (App. Brief at ii, Appeal to Va. S.Ct. No. 930693.)

The matter was resolved in a brief opinion issued November 4, 1994, in which the Virginia Supreme Court, in perfunctory fashion, decided that *Simmons* was not an issue because Petitioner was not parole ineligible on January 29, 1993. *Ramdass v. Commonwealth*, 248 Va. 518, 450 S.E.2d 360 (1994).

---

13. At this point, trial counsel was not obligated to offer or argue for a specific instruction contrary to controlling Virginia law, and counsel

was not constitutionally defective for failing to anticipate a new rule of law. *United States v. McNamara*, 74 F.3d 514 (4th Cir.1996).

Writing for the court, Justice Whiting stated, in pertinent part:

> At the time that the jury was considering Ramdass's penalty on January 30, 1993, Ramdass was not ineligible for parole since he had only two "separate felony offenses" within the meaning of Code § 53.1–151(B1). They were:
>
> (1) Ramdass's January 22, 1993, convictions and sentences for the armed robbery of two persons on August 25, 1992, at a Pizza Hut in Fairfax County. Since both convictions arose from the same transaction, they are considered as one felony offense under the express provisions of Code § 53.1–151(B1).
>
> (2) Ramdass's convictions for Kayani's capital murder and robbery arising from the same transaction and, thus, considered as one felony offense under Code § 53.1–151(B1).
>
> We do not agree with Ramdass's contention that his January 7, 1993, conviction by a jury of an armed robbery in Alexandria also made him ineligible for parole under the statute. Judgment had not been entered on that verdict; therefore, it cannot be considered as a conviction under Code § 53.1–151(B1). *See Smith v. Commonwealth*, 134 Va. 589, 592–93, 113 S.E. 707, 709 (1922)(jury's verdict of conviction upon which no judgment had been entered not conviction within meaning of statute disqualifying person from holding public office). Since Ramdass was not ineligible for parole when the jury was considering his sentence, the *Simmons* decision does not affect his death sentence.

*Id.* at 361.

Petitioner's case is not unlike the *Simmons* case. In both, the prosecution relied solely upon the "future dangerousness" prong of the statutory standard to establish the necessity of imposition of the death penalty. In both, the juries explicitly asked whether the defendant would be paroled if sentenced to life imprisonment. In both, the trial court gave obtuse answers that left the juries to speculate about the meaning of life imprisonment and the probability of the accused being released from incarceration. Under these parallel circumstances, the United States Supreme Court determined that evidence of parole ineligibility is clearly relevant to rebut future dangerousness. Nevertheless, the Virginia Supreme Court determined that *Simmons* did not apply to Petitioner's case because, in the court's estimation, Petitioner was not parole ineligible. The Virginia Supreme Court made this determination, despite the obviously illogical factual basis upon which it was determined that Petitioner was parole eligible and despite the United States Supreme Court's admonition that juries should not be left to speculate about parole eligibility versus life imprisonment. This, the Court finds to be an unreasonable application of *Simmons*.

Moreover, by concluding that Petitioner was parole eligible based on the lack of the ministerial act of a trial court entering judgment, the Virginia Supreme Court evaded the full import of *Simmons*. Even assuming the definition of "conviction" was properly determined by the Virginia Supreme Court, the trial court, prosecution, and defense must have clearly understood that Petitioner was subject to life without parole. That is, everyone was aware that, at the time of the capital sentencing phase, Petitioner had either plead guilty or been found guilty by a jury of at least three qualifying felony offenses under Virginia Code Section 53.1–151(B). Indeed, these offenses were relied upon to establish Petitioner's future dangerousness. The jury could have been informed, with all confidence, that Petitioner would never be released from prison, thereby rebutting the notion that he presented a future danger to society. Nevertheless, by the Virginia Supreme Court concluding that Petitioner was parole eligible and that therefore the trial court's answer to the jury's question was acceptable, the Commonwealth of Virginia "succeed[ed] in securing a death sentence on the ground of future dangerousness while at the same time concealing from the jury the true meaning of its noncapital sentencing alternative, namely, that life imprisonment [for Petitioner] means without parole." *Simmons*, 512 U.S. at 162, 114 S.Ct. 2187.

### 4. Conclusion

For the aforementioned reasons, the Court finds that the judgment of the Virginia Su-

preme Court resulted in a decision that is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and involved an "unreasonable application" of *Simmons* as determined by the Supreme Court of the United States. Accordingly, Respondent's objection is **OVERRULED,** and Petitioner's case is **REMANDED** to the Circuit Court of Fairfax County for resentencing.

**B. Petitioner was denied effective assistance of counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth amendments.**

Petitioner asserts numerous claims of ineffective assistance of trial counsel. To prove ineffective assistance of counsel, a litigant must prove both: "(1) deficient performance and (2) prejudice." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, a litigant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. That is, a litigant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. To prove prejudice, the litigant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Failure to meet either prong defeats a litigant's ineffective assistance of counsel claim. *Id.* at 700, 104 S.Ct. 2052. A court need not address both components of the test if the litigant makes an insufficient showing on one part of the test. *Id.* at 697, 104 S.Ct. 2052.

*1. Trial counsel's trial strategy was nonexistent or internally inconsistent.*

This claim consists of two parts: the procedurally defaulted claim of ineffectiveness for presentation of inconsistent defenses [14]

and the preserved claim of ineffectiveness for failure to produce intent evidence. Only the latter will be addressed here. Petitioner's claim that his trial counsel was ineffective for failing to produce intent evidence is comprised of four (4) underlying claims: (I) Petitioner was unreasonably advised not to testify, thereby failing to confront the prosecution's argument that the gun was fired twice and in an upward position; (ii) trial counsel failed to challenge the credentials and testimony of the prosecution's medical examiner; (iii) trial counsel failed to cross examine the prosecution's firearms identification expert; and (iv) trial counsel failed to obtain an expert who would help them present their theory of the case. Characterizing these claims as "Monday-morning quarterbacking," the Magistrate Judge concluded that each of the claims was without merit.

With respect to the first and second sub-issues, Petitioner objects arguing that the Magistrate Judge failed to consider the affidavits of trial counsel wherein it was stated that these trial strategy choices were unreasonable and highly prejudicial. Even assuming Petitioner was prejudiced by not testifying, it is not deficient performance to advise one's client not to testify. *Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir.1983). Therefore, the first prong is not satisfied because the performance did not fall below the objective standard of reasonableness.

With respect to the third sub-issue, Petitioner objects arguing that the firearms identification expert was never qualified as a "ballistics expert," yet he testified about ballistics matters, and, further, that trial counsel admits in his affidavit that he failed to interview the expert and erroneously allowed him to testify outside his qualifications, thereby substantially proving the prosecution's case. Upon review, the Court finds that the Magistrate Judge's reasoning on these issues is proper. (R & R 45–53.) Neither the Court's nor trial counsel's hindsight is a basis upon which to find that an unsuccessful trial tactic constitutes deficient performance. *Bell v. Evatt,* 72 F.3d 421, 429 (4th Cir.1995).

---

**14.** If the claim were not procedurally defaulted, the claim is nonmeritorious. *See Brown v. Dix-* *on,* 891 F.2d 490 (4th Cir.1989).

With respect to the last sub-issue, Petitioner had two objections. First, he argued that it is improper to deny expert assistance yet rely on the absence of expert evidence to defeat a claim. And second, he contended that despite the Magistrate Judge's statement that testimony was undisputed on the issue of whether the gun was twice fired, Petitioner's own testimony in the penalty phase rebutted such evidence. The Court has already determined that the decision not to have Petitioner testify in the guilt phase regarding his intent was not deficient performance. The fact that Petitioner testified in the sentencing phase does not vitiate the undisputed nature of the evidence offered in the guilt phase that the trigger was pulled two times. Accordingly, Petitioner's objection is **OVERRULED**. This claim lacks merit.

### 2. Trial counsel failed to object to co-defendant's testimony about his life sentence.

■ Citing *Coppola v. Commonwealth*, 220 Va. 243, 257 S.E.2d 797 (Va.1979), the Magistrate Judge determined that it was not ineffective assistance to permit co-defendant Singh to testify regarding his life sentence. (R & R 53–54.) *Coppola* held that a defendant is not entitled to offer evidence that an equally culpable co-defendant had received sentence of life instead of a death sentence. *Id.* Petitioner objects arguing that the Magistrate Judge's reliance on *Coppola* is erroneous because Singh was not the triggerman and, therefore, could not have been sentenced to the death penalty. Petitioner is correct that Singh was not eligible for the death penalty. Va.Code § 18.2–18. Nevertheless, whether such testimony prejudiced the jury is highly speculative. Without a modicum of proof, Petitioner claims that without the testimony there is a "reasonable probability that the jury would not have felt obligated to impose a harsher sentence" on Petitioner. Accordingly, Petitioner's objection is **OVERRULED**.

### 3. Trial counsel failed to conduct adequate voir dire.

With respect to Ross, Powell and Amelia, the Magistrate Judge concluded that trial counsel were not ineffective because (1) they challenged Ross and Powell but the trial judge overruled the challenges, (2) Powell was struck with a peremptory challenge, (3) Ross was the alternate and excused prior to deliberations and (4) Amelia was not selected to serve. (R & R 56.) Petitioner objects claiming that these jurors were legally unqualified to serve and, thus he was entitled either to have them stricken by the trial judge or to receive additional peremptory strikes. The Court finds that the trial judge was within his discretion to deny the challenges, *Maynard v. Dixon*, 943 F.2d 407 (4th Cir.1991), and that even if trial counsel had requested additional peremptory strikes (which they did not), there is no evidence that a biased jury was impaneled, *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Accordingly, Petitioner's objection is **OVERRULED**.

With respect to Petitioner's claim that trial counsel failed to adequately *voir dire* all the jurors on whether they would consider mitigating factors, the Magistrate Judge mentioned only that the Virginia Supreme Court had denied the claim on the merits. (R & R 56.) Petitioner objects claiming that the fact that some of the jurors indicated that they would not consider age or education to be mitigating factors raises a strong inference that other jurors also would not and, therefore, Petitioner is entitled to an evidentiary hearing in order to present such evidence. The Court finds that the claim is nonmeritorious. The transcript reveals that many, if not all, of the jurors were asked if they could consider age and/or education as mitigating factors and, additionally, if they could follow the trial court's instructions regarding mitigating factors. (Tr. 1/26/93 111–13, 118–19, 134, 139, 142–43, 170–71, 185, 188, 193, 221–22, 238.) All indicated that they could follow the court's instructions, even if contrary to their personal opinions. For those few not asked the above questions, counsel made an unchallengeable tactical choice not to inquire. Accordingly, Petitioner's objection is **OVERRULED**.

### 4. Trial counsel conceded the sole aggravating factor in the penalty phase.

■ During sentencing, trial counsel stated in his opening that Petitioner was a bad

man and might commit crimes in the future. Petitioner argues that these statements effectively conceded future dangerousness; therefore, trial counsel was ineffective. The Magistrate Judge determined that, pursuant to *Clozza v. Murray,* 913 F.2d 1092, 1098 (4th Cir.1990), the statements did not constitute ineffective assistance of counsel because they were consistent with maintaining credibility with the jury. Petitioner objects arguing that *Clozza* holds that concessions are acceptable only in some cases and that this is not such a case because trial counsel conceded the very element the prosecution was required to prove beyond a reasonable doubt. The Court finds that trial counsel's statements do not constitute deficient performance. Trial counsel's theory was that no one could know whether Petitioner might commit crimes if he was on the street, but that Petitioner did not represent a future danger to society because he would spend the rest of his natural life in jail for the string of crimes for which he had been convicted. The allegedly improper statements are consistent with that theory and do not constitute deficient performance. Accordingly, Petitioner's objection is **OVERRULED.**

### 5. Trial counsel failed to adequately prepare for the penalty phase.

▮ The Magistrate Judge determined that this claim consisted of two arguments: claims regarding the trial court's appointment of a mental health expert and other miscellaneous claims. For the reasons stated by the Magistrate Judge, (R & R 59–62.), the Court rejects the miscellaneous arguments regarding inadequate preparation. Trial counsel presented evidence of Petitioner's dysfunctional childhood through testimony by Petitioner, Petitioner's brother and mother and a probation officer who had worked with Petitioner. Although reasonable counsel may have chosen to present such evidence in a different manner, trial counsel's choice does not constitute deficient performance.

▮ With respect to the mental health expert, Petitioner objects to the Magistrate Judge's conclusion, arguing that trial counsel was ineffective for not researching the ap-

pointed mental-health expert's background, thereby learning of his allegedly pro-prosecution bias, and for not objecting to the trial court's selection. Even assuming that counsel was deficient in not objecting to the court-appointed expert, the Court finds that Petitioner was not prejudiced. Under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), an indigent defendant is entitled to the appointment of a mental health expert when his legal sanity is likely to be a significant issue at trial. Va.Code. § 19.2–264.3:1 provides in pertinent part:

> Upon (i) motion of the attorney for a defendant charged with or convicted of capital murder and (ii) a finding by the court that the defendant is financially unable to pay for expert assistance, the court shall appoint one or more qualified mental health experts to evaluate the defendant and to assist the defense in the preparation and presentation of information concerning the defendant's history, character, or mental condition, including (i) whether the defendant acted under extreme mental or emotional disturbance at the time of the offense; (ii) whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was significantly impaired at the time of the offense; and (iii) whether there are any other factors in mitigation relating to the history or character of the defendant or the defendant's mental condition at the time of the offense.

The court-appointed expert neither found that Petitioner's sanity was at issue nor determined that Petitioner's history or character was a mitigating factor. Evidence regarding Petitioner's history and character, however, was presented through Petitioner, his mother and brother, and a probation officer. Further, Petitioner's repeated involvement in the criminal justice system had resulted in several mental evaluations which were consistent with each other. Evidence of these evaluations was presented through the probation officer. Finally, at no time has a mental evaluation of Petitioner revealed evidence that Petitioner was (or is) operating under a mental disease or defect which would

render him unaccountable for his behavior. Accordingly, the Court finds that Petitioner was not prejudiced by any failure to object to the court-appointed expert or obtain an independent mental health evaluation. Accordingly, Petitioner's objection is **OVERRULED.**

**C. Petitioner was unreasonably and unfairly deprived of basic expert assistance in violation of the Fifth, Sixth, Eighth and Fourteenth amendments.**

The Magistrate Judge determined that the trial court was within its discretion in denying the requests for a medical doctor and expert investigator. (R & R 63.) Petitioner objects to the finding as to the medical expert. Petitioner argues that the trial court's denial of a medical expert on the grounds that "no medical evidence had been presented was an exercise in pretzel logic." The Court finds that the trial judge's decision was not unreasonable in light of the lack of evidence Petitioner presented to justify his need for medical evaluation. Accordingly, Petitioner's objection is **OVERRULED.**

**D. Petitioner was arbitrarily and unreasonably denied his rights under the Fifth, Sixth, Eighth and Fourteenth amendments to make an *ex parte* showing of need for expert assistance.**

 The Magistrate Judge determined that this claim was without merit because there was no constitutional entitlement to *ex parte* hearings on requests for the appointment of experts, and, if there is, such right would constitute a new rule that was not in place at the time of Petitioner's trial. (R & R 68.) Petitioner objects arguing that the requirement of an *ex parte* proceeding is firmly established by both the Supreme Court and the lower courts.

Under federal criminal procedure, when a defendant requests expert assistance, there is clearly a statutory right to an *ex parte* hearing. 18 U.S.C. § 3006A(e)(1). The appropriateness of conducting *ex parte* hearings is obvious: a defendant should not be forced to disclose its evidence and strategy to the prosecution. In *Ake*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, the United States Supreme Court recognized the need for an *ex parte* hearing, but did not hold that such a hearing is constitutionally required. Consequently, the adoption of such a rule at this point in Petitioner's case would be a new rule which, generally, should not be created on collateral review. *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Accordingly, the objection is **OVERRULED.**

**E. The trial court's refusal to allow Petitioner exculpatory statements, the trial court's refusal to review such statements *in camera* and the prosecutor's improper refusal to provide exculpatory statements denied Petitioner his Fifth, Sixth and Fourteenth amendment rights.**

Neither party objected to the Magistrate Judge's determination of this claim. Accordingly, the Court adopts the Magistrate Judge's rationale, (R & R 70–73.), which is reiterated herein in pertinent part. For the following reasons, the Court finds this claim to be nonmeritorious.

 Petitioner's claim has three components. The first is the denial of polygraph results which trial counsel sought to use for impeachment purposes. The second component consists of statements made to the police by Petitioner's co-defendants and other prospective witnesses, including inculpatory and inconsistent statements made by co-defendants. The third is the trial court's refusal to conduct an *in camera* review. With respect to the first claim, polygraph material is inadmissible under Virginia law, *Robinson v. Commonwealth*, 231 Va. 142, 341 S.E.2d 159, 167 (1986). Moreover, failure to disclose polygraph results does not deprive a defendant of "material" evidence under the *Brady* rule when the polygraphs results are inadmissible, even for impeachment purposes, as in the Commonwealth of Virginia. *Wood v. Bartholomew*, 516 U.S. 1, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995).

 With respect to the second claim, in order for a *Brady* violation to occur, the material sought must be "material." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is "materi-

al" under *Brady* "only where there exists a 'reasonable probability'" that had the evidence been disclosed the result at trial would have been different. *Wood,* 516 U.S. at 5, 116 S.Ct. 7. A "reasonable probability" that the result would have been different is shown when the actions of the government "undermine[ ] confidence in the outcome of the trial." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Here, counsel has not demonstrated that the withheld material undermines the confidence in the outcome of this trial.[15]

With respect to the third claim, the trial court did not commit error by refusing to examine the prosecution's file *in camera* to determine the presence of exculpatory material. In *Rowe v. Grizzard,* 591 F.Supp. 389 (E.D.Va.1984), similar to this case, defense counsel asked for "statements made by co-defendants and witnesses which either contradicted others' statements and/or were internally inconsistent." *Id.* at 398. The trial court refused, noting the prosecution's burden to comply with *Brady. Id.* In denying the federal habeas petition, the district court stated: "Absent a more specific request than was made, the trial court is not required to make an *in camera* inspection of the prosecution's entire file." *Id.*

**F. The Virginia death penalty statutes on their face, and as applied, violate the Sixth, Eighth and Fourteenth amendments.**

The Magistrate Judge determined that this claim is nonmeritorious. (R & R 77–85.) Petitioner generally objects without pointing to specific errors in the Magistrate Judge's reasoning. The Court finds that the claim is nonmeritorious. The Fourth Circuit has denied claims similar to Plaintiff's preserved claims regarding jury consideration of mitigation evidence and consideration of unadjudicated misconduct. *See Gray v. Thompson,* 58 F.3d 59, 63 (4th Cir.1995); *Tuggle v.*

*Thompson,* 57 F.3d 1356, 1362 (4th Cir.1995). Accordingly, Petitioner's objection is **OVERRULED.**

**G. Petitioner was denied his right to confrontation in violation of the sixth amendment.**

 Petitioner claims that he was denied the right of confrontation in the course of cross-examining co-defendant Ramirez because the trial court sustained prosecution objections to defense questions concerning Ramirez' character and the location of fingerprints at the crime scene. The Magistrate Judge determined that the claim was nonmeritorious because only issues of state criminal procedure and evidence were challenged and such issues did not rise to a constitutional level. (R & R 85–86.) Petitioner objects arguing that the wholesale sustaining of objections prevented adequate cross examination on Ramirez' character and propensity for criminal conduct, thereby affecting the jury's verdict(s) with respect to guilt and/or sentencing.

No litigant, including a death penalty defendant, has the unlimited right to conduct an examination of any witness called to the stand. The judgment of the trial court in denying certain questions it found to be prejudicial or irrelevant was clearly within the province of the trial court and was upheld on appeal by the Virginia Supreme Court. As the United States Supreme Court noted in *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), a federal court's habeas review is not intended to address issues of state criminal procedure and evidence. Accordingly, Petitioner's objection is **OVERRULED.**

**H. The trial court violated Petitioner's constitutional rights by admitting unadjudicated misconduct in the penalty phase.**

The Magistrate Judge determined that Virginia law permits the use of unadjudicated

---

15. Moreover, *Brady* requires only that the government disclose evidence not available to the defense from other sources either directly or through diligent investigation. *Barnes v. Thompson,* 58 F.3d 971, 975 n. 4 (4th Cir.1995); *Stock-* ton *v. Murray,* 41 F.3d 920, 927 (4th Cir.1994); *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990). Petitioner has not asserted that he had no other means of obtaining the material which was withheld.

criminal conduct in the sentencing phase. (R & R 86.) Citing *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), Petitioner objects arguing that the federal constitution requires that the prosecution prove by a preponderance of the evidence that the defendant committed the unadjudicated conduct. In *Nichols*, the Supreme Court held that the federal due process clause requires in a non-capital, federal action that previous conduct being used to enhance a sentence be proved by a preponderance of the evidence. *Id.* 114 S.Ct. at 1928.

■ The Court finds that Petitioner's argument, if accepted, would create a new rule which was not in effect at the time his conviction became final. *Saffle*, 494 U.S. at 488, 110 S.Ct. 1257. The United States Supreme Court has repeatedly refused to determine the issue of whether unadjudicated criminal conduct can be introduced in the sentencing phase of a capital trial.[16] At the time of Petitioner's trial, Virginia statutory law permitted the introduction of such evidence when certain notice requirements are met. *Watkins v. Commonwealth*, 229 Va. 469, 331 S.E.2d 422, 435 (Va.1985); *see also Gray v. Thompson*, 58 F.3d 59, 63 (4th Cir.1995). Virginia law, however, did not require that the prosecution prove the conduct by any standard. *See Beaver v. Commonwealth*, 232 Va. 521, 352 S.E.2d 342 (Va.1987). Because federal courts generally do not create new rules or apply new constitutional rights on collateral review, *Saffle*, 494 U.S. at 488, 110 S.Ct. 1257, Petitioner's claim must fail. Accordingly, Petitioner's objection is **OVERRULED.**

## I. Virginia's capital murder sentencing statute is unconstitutional.

■ The Magistrate Judge determined that this claim is nonmeritorious. (R & R 77–85.) Petitioner generally objects without pointing to specific errors in the Magistrate

Judge's reasoning. The Court finds that the claim is nonmeritorious as the statute is not unconstitutionally vague. The Fourth Circuit has denied Plaintiff's preserved claims that the "future dangerousness" prong of the Virginia capital sentencing statute is unconstitutional on that ground. *See Gray v. Thompson*, 58 F.3d 59, 63 (4th Cir.1995) (finding that "future dangerousness" may be determined using unadjudicated misconduct); *Tuggle v. Thompson*, 57 F.3d 1356, 1362 (4th Cir.1995) (stating that Virginia is a "non-weighing" state, i.e. its statutory scheme narrows the class of persons eligible for death penalty and a weighing instruction is not required by the federal Constitution); *Spencer v. Murray*, 5 F.3d 758 (4th Cir.1993) (finding that "future dangerousness" prong is not vague). Accordingly, Petitioner's objection is **OVERRULED.**

## V. REQUEST FOR EVIDENTIARY HEARING

Whether an evidentiary hearing is required is determined in light of the petition, the answer, the transcript and record of state court proceedings, and any expanded record evidence. *See* Rule 8, Rules Governing § 2254 Cases. If a hearing is not required, "the judge shall make such disposition of the petition as justice shall require." The Court finds that the facts presented in the record, transcripts of the state court proceedings, the affidavits of trial counsel and experts, and the arguments presented in the pleadings lead to the conclusion that an evidentiary hearing is not required to address the claims raised by Petitioner. Accordingly, the request for an evidentiary hearing is denied.

## VI. CONCLUSION

The Court, having examined the objections to the Magistrate Judge's R & R, and having reviewed the record and conducted a *de novo* review of those portions objected to, does hereby order that the petition be **GRANTED**

---

**16.** In *United States v. Beckford*, 964 F.Supp. 993 (E.D.Va.1997), the court considered the issue of whether unadjudicated criminal conduct is admissible in a federal capital case. It indicated that the states are divided over the issue. As of 1993, six (6) states permit the use of such evidence almost without limitation; ten states re-quire certain procedural safeguards; and eight states absolutely prohibit the introduction of such evidence. *See* Steven Paul Smith, Note, *Unreliable and Prejudicial: the Use of Extraneous Unadjudicated Offenses in the Penalty Phase of Capital Trials*, 93 Colum.L.Rev. 1249, 1250 (1993).

and that Respondent's motion to dismiss be **DENIED.** Petitioner's case is **REMANDED** to the Circuit Court of Fairfax County for re-sentencing in light of the Court's rulings herein.

It is so **ORDERED.**